Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7785 | **DATE** | 4/30/2002 |
| **CASE TITLE** | James E. Nichols vs. Jeffrey J. Johnson, *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion *in limine* no. 4 is granted. Plaintiff's motion *in limine* nos. 1-3 are denied. Defendants' motions *in limine* nos. 1 and 5 (as amended) are granted. Defendants' motions *in limine* nos. 2 through 4 are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/30/2002 | |
| | courtroom JJK deputy's initials | | date mailed notice JJK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. NICHOLS, )
)
    Plaintiff, )
) No. 00 C 7785
vs. )
) Magistrate Judge Schenkier
JEFFREY J. JOHNSON, Individually )
and as agent, servant and/or employee of )
CUSTOM GRADING AND )
INSTALLATIONS, LLP., a Wisconsin )
Corporation, )
)
    Defendants. )

**DOCKETED**

**MAY - 1 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant the diversity jurisdiction of this Court, 28 U.S.C. § 1332, to recover for personal injuries he allegedly suffered during an automobile accident in Lake Geneva, Wisconsin on December 14, 1998. On February 16, 2001, by virtue of the consent of the parties pursuant to 28 U.S.C. § 636(c), the case was transferred to this Court for all proceedings, including the entry of final judgment (doc. # 10). The case is set for a jury trial to commence on June 10, 2002. Presently before the Court are various motions *in limine* filed by each of the parties. The Court's rulings on each of the motions *in limine* are set forth below.

### I.

Plaintiff has filed four motions *in limine*. Defendants have failed to respond to one of those motions: a motion to bar defendants from eliciting testimony that the defendant Jeffrey Johnson did not receive a ticket from the investigating police officer in connection with the event of December 14, 1998 (Pl.'s Motion *in Limine* No. 4). In support of this motion, plaintiff has cited a



case decided under Wisconsin law, which the parties appear to agree governs the substantive issues in this case, holding that admission of evidence concerning the issuance of a traffic citation generally is error (although it wasn't in that case because defendants had opened the door). *Sailing v. Wallestad*, 145 N.W.2d 725, 731 (Wis. S. Ct. 1966). Defendants have offered no reason why this rule should not apply here. Accordingly, plaintiff's motion *in limine* no. 4 is **GRANTED**.

Defendants have filed memoranda in opposition to each of the remaining three motions *in limine*. We address each of those motions in turn.

### A. Motion *in Limine* to Bar Defendants from Arguing that the Jury Verdict is Nontaxable (Pl.'s Motion *in Limine* No. 1).

In this motion, plaintiff argues that under Illinois law, *Hall v. Chicago Northwestern Railroad Co.*, 125 N.E.2d 77 (Ill. S. Ct. 1955), it is improper to argue or to suggest to the jury that a damages award is nontaxable. As defendants correctly point out, there are two problems with this argument.

*First*, and foremost, the Seventh Circuit has held that this Illinois rule is not a substantive one that governs cases tried in federal court under diversity jurisdiction, because the Illinois rule is based on concerns that "are either procedural or based on a mistaken view of federal law." *In re Air Crash Disaster Near Chicago, Ill.*, 701 F.2d 1189, 1200 (7th Cir. 1983). The reasoning underlying this ruling was reaffirmed by the Seventh Circuit thereafter in *In re Air Crash Disaster Near Chicago, Ill.*, 803 F.2d 304, 314-15 (7th Cir. 1986), and appears to remain the law in this circuit. *See Opio v. Worr*, 901 Supp. 1370, 1373-74 (N.D. Ill. 1995). *Second*, even if state law supplied the governing rule, plaintiff has offered authority only as to Illinois law on this subject rather than Wisconsin law – which plaintiff has cited as providing the substantive rule in all of his other motions *in limine*.

2

Finally, to the extent that plaintiff seeks to exclude evidence or argument on this point on the ground that its probative value would be substantially outweighed by unfair prejudice, Fed. R. Evid. 403, we find that argument unpersuasive. We see no reason why this evidence would unfairly prejudice the plaintiff. If the jury decides to award damages, it is entitled to know that the award will not be subject to taxation – a point which may be contrary the jurors' assumption. To the extent that plaintiff argues that providing this information might deprive him of a tax benefit intended by Congress by inducing the jury to reduce a damages award by the amount of the tax benefit (or, to decline to increase the award to account for taxes), the Supreme Court has made clear that federal law does not create a positive tax benefit for a plaintiff. *Norfolk & W. Ry. v. Liepelt*, 444 U.S. 490, 496 n.10 (1980); *see also In re Air Crash Disaster*, 701 F.2d at 1200 ("plaintiffs are not entitled under state or federal law to receive a bonus beyond compensatory damages, so informing the jury is harmless at most").

Accordingly, plaintiff's motion *in limine* no. 1 is **DENIED**.

> **B.** **Motion *in Limine* to Bar Defendants from Arguing that Plaintiff's Prior Ankle Injury Would Have Prevented Him From Performing His Work Activities as He was Able to Perform them Prior to December 14, 1998 (Pl.'s Motion *in Limine* No. 2).**

One of the injuries that plaintiff allegedly suffered on December 14, 1998 was a fracture of his right ankle. According to plaintiff's motion, there is evidence that plaintiff had suffered an injury to that same ankle some time in the 1970's. Plaintiff concedes that under Wisconsin law, "testimony concerning pre-existing physical condition [is] proper on the issue of pain and suffering," because one of the factors that a jury should consider in evaluating a claim for pain and suffering is evidence of the plaintiff's prior health and "whether some pain was attributable to pre-existing physical

3

disorders and, if so, whether this condition was aggravated by the incident in question." *Helleckson v. Loiselle*, 155 N.W.2d 45, 49-50 (Wis. S. Ct. 1967). Thus, there appears to be no dispute that evidence of plaintiff's prior ankle injury will be a part of the evidence offered at trial.

What plaintiff's motion appears to seek is a limitation on the use of that evidence. Plaintiff argues that because "there has been no expert medical evidence that any prior ankle injury suffered by the plaintiff would have prevented him from performing his work activities as he was able to perform them prior to December 14, 1998," defendants should be barred from making that argument. The defendant says that "[i]f the plaintiff is only seeking to bar this argument, the motion is unnecessary (Defs.' Response to Pl.'s Motion *in Limine* No. 2, at 1) – therefore suggesting that defendants do not plan to make such an argument. Thus, it is difficult to see exactly what the parties are arguing about, since (a) they both agree that this evidence will be admissible on the question of pain and suffering, and (b) nobody is arguing that the evidence should be used to argue that plaintiff's prior ankle injury would have prevented plaintiff from working as he did prior to December 14, 1998.

Nonetheless, defendants seek to carve out a right to argue about "whatever reasonable inferences" might be drawn from the testimony of the prior ankle injury and plaintiff's work activities prior to the accident (Defs.' Response to Pl.'s Motion *in Limine* No. 2, at 1). Perhaps defendants wish to argue that this prior ankle injury caused a degenerative condition within plaintiff's right ankle that, even without the December 14, 1998 accident, would have affected his ability to work as he did before December 14, 1998 at some later time in the future. Whether the evidence will support such an inference is not something that the Court can assess prior to hearing

4

what all the evidence on the subject will be. Accordingly, plaintiff's motion *in limine* no. 2 is **DENIED.**[1]

### C. Motion *in Limine* to Bar Defendants and Their Expert, James Boyd, from Offering Testimony as to Plaintiff's Future Employability (Pl.'s Motion *in Limine* No. 3).

One of defendants' expert, James Boyd, has offered an opinion concerning the types of employment that the plaintiff may engage in, and the earnings he may achieve, given the "restrictions imposed on Mr. Nichols' functional capacity" (Pl.'s Motion *in Limine* No. 3, Ex. A, at 2). In his deposition, Mr. Boyd testified that his opinion did not take into account possible future changes in the plaintiff's condition (other than the likelihood of a right ankle fusion and left knee replacement), and that he was not expressing opinions about the plaintiff's employability "five years down the road or ten years down the road" (*Id.* Ex. B, at 36). Plaintiff argues that Mr. Boyd (and the defendants) should not be allowed to express an opinion about plaintiff's future employability, since his current limitations "are permanent and are likely to worsen over time, thus, further limiting any abilities he may currently have to work" (Pl.'s Motion *in Limine* No. 3, at 2).

The linchpin to plaintiff's motion is the assertion that the medical testimony establishes that plaintiff's condition will deteriorate, and that Mr. Boyd cannot express an opinion about employability based on increased functional limitations that plaintiff may experience in the future. However, on the question of whether plaintiff's condition is "likely to worsen over time," the medical testimony that plaintiff cites, however, does not go quite so far as plaintiff suggests.

---

[1] In their opposition to the motion, defendants cited the case of *Ortin v. Miller Brewing Co.*, 356 N.W. 2d 496 (Wis. Dist. 1984). However, *Ortin* is an unpublished decision which bears a legend indicating that pursuant to Rule 809.23(3) of the Wisconsin Statutes Annotated, unpublished opinions "are of no precedential value and may not be cited except in limited instances" (such as to support an argument of claim preclusion, issue preclusion or law of the case, none of which apply here). Accordingly, the Court has disregarded *Ortin* in ruling on this motion.

5

Dr. Baisden indicated that plaintiff's back condition was progressive, but when asked whether that would cause plaintiff's pain and limitations to increase, Dr. Baisden stated only that these limitations could be expected "to *persist*" (Pl.'s Motion *in Limine* No. 3, Ex. C, at 57-58) (emphasis added). Dr. Baisden did not indicate – at least in any testimony cited to the Court – that plaintiff's functional limitations would increase materially over time.

Once again, the Court will not issue an order precluding testimony based on an assumption about what the complete evidentiary record at trial will show. To the extent that he is able to do so consistent with the rules of evidence, plaintiff certainly may offer evidence that his functional limitations will increase in the future. If he presents such evidence, it would be permissible for either side to ask Mr. Boyd how specific future changes in plaintiff's functional limitations would (or would not) affect his opinion about plaintiff's employability.

Accordingly, plaintiff's motion *in limine* no. 3 is **DENIED**.

## II.

Defendants have filed five motions *in limine*. Plaintiff has chosen not to respond to one of those motions – defendants' amended motion *in limine* to bar testimony of cognitive deficits (Defs.' Amended Motion *in Limine* No. 5), which seeks to bar evidence of any alleged cognitive deficits suffered by plaintiff as a result of the accident. This motion is based on the absence of any medical testimony linking any cognitive deficits to the accident. Plaintiff has cited no evidence that he could offer on this point. Accordingly, defendants' amended motion *in limine* no. 5 is **GRANTED**.

Plaintiff opposes each of the remaining four motions *in limine* filed by defendants. We address each of those motions in turn.

A.  **Motion *in Limine* to Bar Daniel Derrick's Testimony Concerning Excessive Speed (Defs.' Motion *in Limine* No.1).**

Officer Daniel Derrick of the Lake Geneva Police Department was an investigating officer at the scene of the accident. The parties appear to agree that while Officer Derrick was personally familiar with the particular stretch of road on which the accident occurred and the conditions at or about the time of the accident, he did not observe the accident; he did not observe defendant Johnson as he was driving prior to the accident; and he did not know the speed at which he was driving. In this motion, defendants seek to bar Officer Derrick from opining that Mr. Johnson was driving at an excessive rate of speed prior to the collision. Defendants argue that such testimony would not be proper lay opinion, Fed. R. of Evid. 701 and that, in any event, it should be excluded because any probative value of the opinion would be substantially outweighed by its unfair prejudice. Fed. R. of Evid. 403. Plaintiff argues that the evidence meets the requirements for lay opinion testimony, and would not be unfairly prejudicial.

Both parties cite two requirements for a lay opinion to be admissible under Rule 701: that it be "rationally based on the perception of the witness," and that it be "helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue." Both parties ignore that, with the amendments to Rule 701 that became effective on December 1, 2000, there is a third requirement for a lay opinion to be admissible under Rule 701: that it is not "based on scientific, technical or other specialized knowledge within the scope of Rule 702." The Advisory Committee Notes explain the reason for this additional requirement: "[b]y channeling testimony that is actually expert testimony to Rule 702, the amendment also insures that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a lay

7

person." Advisory Committee Notes to 2000 Amendments to Rule 701. In this case, the Court concludes that defendants' motion should be granted, because the proffered opinion testimony fails to meet this new requirement of Rule 702 – as well as the other two requirements.

*First*, while Officer Derrick has personal knowledge of the stretch of road and various road conditions at or about the time of the accident, he has absolutely no personal knowledge of defendant Johnson as he generally drives, or as he drove on that particular day. Rather, Officer Derrick is taking his personal knowledge about the facts concerning the conditions that day, applying his training and experience to those facts, and reaching a conclusion about an alleged fact (that defendant Johnson was driving at a speed excessive for the conditions) of which he has no personal knowledge. Thus, Officer Derrick's opinion fails to meet the personal knowledge requirement of Rule 701.

*Second*, in applying the training and experience that he has as a police officer to reach an opinion, Officer Derrick is applying "scientific, technical or other specialized knowledge" that is beyond the ken of ordinary lay people. Under Rule 701, as amended in 2000, therefore, his opinion falls more in the realm of expert testimony under Rule 702 than lay opinion testimony under Rule 701. However, Officer Derrick has not been disclosed has an expert witness, and thus it is too late for defendant to seek to offer his opinion testimony under Rule 702.

*Third*, even assuming that Officer Derrick's opinion would fall within the category of lay witness opinion, it is not clear to the Court that it would meet the standard of being helpful to the jury in understanding a fact in issue. Everybody agrees that Officer Derrick can testify as to what he observed with respect to the road conditions around the scene of the accident. Thus, those facts will be before the jury, and can be assessed by the jury – together with all the other evidence – in

8

reaching a decision concerning whether Mr. Johnson's conduct was negligent. If a lay witness had seen Mr. Johnson driving and could thus have a basis in personal knowledge to estimate his speed, that plainly would help the jury and would be admissible. *See, e.g., Iverson v. Iverson*, 370 N.E. 2d 1135, 1142 (Ill. App. Ct., 1st Dist. 1977) (eyewitness "[e]stimates of speed of an automobile at a given time are considered a matter of common observation rather than expert opinion") (quotations omitted). But, Officer Derrick lacks that kind of personal knowledge.

To allow someone offered as a lay witness to express an opinion based on the same evidence that the jury has before it would not assist the jury. *See United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996) ("[w]e do not understand how a witness' subjective belief that a defendant 'must have known' [something] is helpful to a fact finder that has before it the very circumstantial evidence upon which the subjective opinion is based"); *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("when a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness' opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew"). To the extent that plaintiff protests that Officer Derrick's opinion would be helpful to the jury because his training and skill place him in a superior position to an ordinary lay person with respect to assessing the circumstantial evidence, that only underscores that this opinion by Officer Derrick would be a Rule 702 opinion – not lay opinion under Rule 701.

Because Officer Derrick's opinion testimony concerning Mr. Johnson's speed fails to meet the requirements of Rule 701, we need not address defendant's alternative argument under Rule 403. Defendant's motion *in limine* no. 1 is **GRANTED**.

## B. Motion *in Limine* to Bar Testimony Regarding Lost Profits from Hay Business (Defendants' Motion *in Limine* No. 2).

Prior to the incident on December 14, 1998, plaintiff participated in the operation of a farming business which involved the sale of hay. After December 14, 1998, plaintiff ceased that line of business. As part of the damages in his case, plaintiff seeks to recover $30,000.00 to $45,000.00 in lost profits from the hay business between 1999 to 2001, and an additional amount of $150,000.00 to $250,000.00 for lost future profits from the hay business (Final Pretrial Order, at 6). Defendants seek to bar plaintiff from offering evidence of lost profits from the hay business. Defendants argue that neither plaintiff nor his partner, Robert Nichols, have an adequate foundation to testify to the profits from that business, and that the documents that plaintiff relies on to show what the profits were (accountant's records and other "books") have not been produced.

Generally speaking, the owner or officer of a business is entitled to offer testimony as to the profits of the business, without the need to qualify the witness as an accountant, appraiser or other type of expert. *See, e.g., Lightning Lube, Inc. v. Wico Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993). The rationale is that such testimony is permissible lay opinion under Rule 701. In *Lightning Lube*, the appeals court concluded that the district court had not abused its discretion by allowing the plaintiff's owner to testify about both past lost profits and expected future lost profits, based in part on reports he had received from his accountant. *Id.*

In this case, plaintiff and his partner, Robert Nichols, are both listed as trial witnesses. They both participated in the hay business, and thus have personal knowledge of that business. The fact that they base their opinions about profitability in part on information from books and records prepared by an accountant does not, by itself, render their lay opinion testimony inadmissible. We

10

see no reason to believe that the 2000 Amendment to Rule 701 was intended to deprive business owners of the ability to offer their own opinion about business profitability.

As for the complaint that plaintiff never disclosed the books and records used to reach the lay opinion on profitability, defendants have not identified to the Court any discovery requests that specifically sought those materials. However, in order to insure that defendants have a fair opportunity at trial to cross-examine any testimony offered by plaintiff at trial concerning profitability, the Court orders that plaintiff produce any books and records concerning the profit or loss from the hay business by no later than May 10, 2002, and produce for deposition the accountant or the individual who prepared those books and records by no later than May 30, 2002. To the extent that any party wishes to add that accountant as a witness, the Court grants leave to any party to do so by filing with the Court an addendum to the Final Pretrial Order by no later than May 31, 2002.

Accordingly, defendants' motion *in limine* no. 2 is **DENIED**.

### C. Motion *in Limine* to Bar Dr. Street-Vetter's Testimony of Future Medical Treatment to Plaintiff's Left Knee (Motion *in Limine* No. 3).

One of the injuries suffered by plaintiff in the December 14, 1998 accident was a fracture of his left tibia at the joint with the knee. Defendants seek to bar one of plaintiff's doctors, Dr. Street-Vetter, from offering any opinions concerning future medical treatment that plaintiff will require to his left knee, including knee replacement surgery.

Under Wisconsin law, medical testimony must be expressed in terms of a reasonable degree of "medical probability." *Pucci v. Rauch*, 187 N.W. 2d 138, 141 (Wis. S. Ct. 1971). In *Pucci*, the court explained that the "term 'medical probability' more accurately expresses the standard" that applies than does the term "'medical certainty' [which] is misleading if certainty is stressed to mean

absolute certainty or metaphysical certainty." *Id.* The court held that the standard of "medical probability" requires "a conviction of the mind or that degree of positiveness that the doctor has in his opinion, which is based upon his knowledge of medicine and the case facts, that his belief is correct to a reasonable medical probability." *Id.*

The *Pucci* court canvassed cases in which opinions expressed in terms of what "might" or "could" happen generally were held not to meet the degree of "positiveness" required by the standard, and cases in which opinions expressed in terms of what the doctor "felt" or "believed" or thought would be "liable" to occur were held sufficient to meet the standard. *Id.* The court concluded that the standard should be applied by assessing not what particular words the doctor used, but the meaning or sense in which the doctor used them. *Id.* at 142.

Using that standard here, we do not believe it appropriate at this time to bar Dr. Street-Vetter from expressing an opinion concerning future medical treatment for plaintiff's right knee. There is medical testimony that the injury to his left knee was the result of the December 14, 1998 accident (Pl.'s Response to Defs.' Motion *in Limine* No. 3, Ex. B at 68). Dr. Street-Vetter, as well as other doctors, have expressed the opinion that plaintiff suffers from a progressive condition in his left knee that will deteriorate over time, and that will result in a progression of pain over time (*Id.*, Ex. A at 21-22; Ex. C at 60). Dr. Street-Vetter also testified that as the condition she diagnosed in his knee continues to advance, the natural progression is that a patient will experience advanced arthritis, and that the "best course of treatment for such a problem is ultimately a knee replacement surgery" (*Id.*, Ex. A at 22). Dr. Street-Vetter then was asked whether it was her "opinion based upon *a medical certainty* that at some point in time [plaintiff's] knee will progress to some point in time that [knee replacement surgery] becomes an option for him;" she responded that "if his degeneration continues

and his symptoms are such that he can't live with it, that . . . is a good option for him" (*Id.* at 23) (emphasis added). Dr. Street-Vetter also testified that arthroscopic surgery was an alternative procedure to a knee replacement surgery (*Id.*).

From this testimony, it is unclear whether Dr. Street-Vetter would express an opinion to a reasonable degree of medical probability (the standard under Wisconsin law) that Mr. Johnson will need a knee replacement or an alternative medical procedure in the future, because nobody asked her that specific question. The question asked by defense counsel was posed in terms of medical certainty, which is not the standard under Wisconsin law. Thus, the record submitted to the Court does not support a conclusion that Dr. Street-Vetter will be unable to testify at trial, to a reasonable degree of medical probability, that plaintiff will need future medical intervention to his knee.

Accordingly, defendants' motion *in limine* no. 3 is **DENIED**.

### D. Defendants' Motion *in Limine* to Bar Testimony Concerning the October 11, 1999 Surgery (Motion *in Limine* No. 4).

On October 11, 1999, the plaintiff underwent a surgical procedure to his right ankle to remove an osteophyte. There is testimony indicating that this osteophyte was the result of an ankle injury that plaintiff suffered in the mid 1970's, and was not caused by the December 14, 1998 accident. On this basis, defendants have filed a motion *in limine* seeking to bar evidence of the October 1999 surgery and corresponding medical bills.

The problem with this argument is that there is testimony that prior to the December 1998 accident, any osteophyte in plaintiff's right ankle was asymptomatic – meaning, it did not particularly bother him (Defs.' Motion *in Limine* No. 4, Ex. A, at 27). Moreover, medical testimony elicited during discovery also indicates that while the December 14, 1998 accident did not cause the

13

osteophyte, it "aggravated a pre-existing condition" (*Id.* at 26-27). In the Court's view, based on what has been presented on this motion, there is sufficient evidence linking the October 1999 surgery with the December 1998 accident to present the question to the jury. Accordingly, Defendants' motion *in limine* no. 4 is **DENIED**.

## CONCLUSION

For the foregoing reasons:

1. Plaintiff's Motion *in Limine* No. 4 is **GRANTED**.

2. Plaintiff's Motions *in Limine* Nos. 1-3 are **DENIED**.

3. Defendants' Motions *in Limine* Nos.1 and 5 (as amended) are **GRANTED**.

4. Defendants' Motions *in Limine* Nos. 2 through 4 are **DENIED**.

With respect to those motions *in limine* that have been granted, the lawyers are responsible for informing their witnesses of the evidence excluded by this opinion, and to take steps to insure that they do not disclose excluded evidence to the jury during their testimony.[2]

By May 10, 2002, plaintiff shall produce records or books on which he bases his opinion on the profitability of the hay business. By May 30, 2002, the defendants may depose the accountant

---

[2]In the Pretrial Order, the parties have stipulated to bar defense counsel from arguing that plaintiff's counsel has asked for a greater amount of damages than plaintiff expects to receive; to bar evidence of collateral source benefits; to bar the defense from arguing or suggesting that defendant has no insurance; to bar discussion of the wealth, poverty or pecuniary circumstances of the parties; to exclude witnesses from the courtroom; to bar evidence of either the plaintiff's or defendants' insurance; and to bar labor expenses as an item of damages (Final Pretrial Order, at 7-8). The lawyers are responsible for informing their witnesses of those stipulations and to insure that they do not testify to the matters covered by those stipulations at trial.

or other individual who prepared those records. By May 31, 2002, either side may add that person to the list of trial witnesses.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: April 30, 2002**